LBIHJonC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  MICHAEL J. JONES, JR.,

4              Plaintiff,

5       v.                          21 Civ. 2145 (MKV)

6  NEW YORK CITY DEPARTMENT OF
   CORRECTIONS, et al.,
7
             Defendants.
8                                   Telephone Conference
   ------------------------------x
9                                   New York, N.Y.
                                    November 18, 2021
10                                  2:30 p.m.

11 Before:

12              HON. MARY KAY VYSKOCIL,

13                                  District Judge

14                 APPEARANCES

15 MICHAEL J. JONES, JR., Pro Se Plaintiff

16 NEW YORK CITY LAW DEPARTMENT
        Attorneys for Defendant
17 BY:  CAROLYN KRUK

18

19

20

21

22

23

24

25

LBIHJonC

1          (The Court and all parties present remotely)

2          THE DEPUTY CLERK:  Good afternoon, your Honor.  We're

3    here in the matter of 21 Civ. 2145, Jones v. New York City

4    Department of Corrections, *et al.*

5          Plaintiff, please state your name for the record.

6          MR. JONES:  Me?

7          THE DEPUTY CLERK:  Yes, sir.

8          MR. JONES:  Michael Jones.

9          MS. KRUK:  Hi.  Good afternoon.  Carolyn Kruk with the

10   New York City Law Department, for the defendant.

11         THE COURT:  All right.  Good afternoon, Ms. Kruk.

12         Do we have the plaintiff?

13         MS. KRUK:  Yes.  His voice is a little faint.

14         Mr. Jones, if you could speak up a little, please.

15         MR. JONES:  Michael Jones, 18A1781.

16         THE COURT:  Oh, good afternoon, Mr. Jones.  I'm sorry.

17   I did not hear you.

18         MR. JONES:  All right.  Good afternoon, your Honor.

19         THE COURT:  All right.  Good afternoon.

20         And we have our court reporter with us, Ms. Robles.

21   You can hear clearly enough?

22         THE REPORTER:  Yes, Judge.  He's very faint, though.

23         THE COURT:  All right.  We are here for really your

24   initial conference with me in this case in which Mr. Jones is

25   alleging certain violations of his constitutional rights while

1     he was detained on Rikers Island.  There have been several

2     orders issued by the chief judge, two different chief judges,

3     of this district, the first authorizing Mr. Jones to proceed

4     *pro se* and *in forma pauperis*, and thereafter Judge Swain took

5     over as chief judge, and she directed that an amended complaint

6     be filed.  That has happened.  The case was then assigned to

7     me.

8           As I say, this is our initial conference in this case,

9     and we are proceeding remotely, largely because of the COVID-19

10    pandemic but also for the convenience of everybody and to save

11    expense and money.

12          Having said that, this is a formal court proceeding as

13    if we were in open court.  We do have a court reporter with us,

14    and she will prepare a transcript of what happens at today's

15    proceedings, and that will be available to the parties.

16          I do remind you that you cannot record or rebroadcast

17    today's proceedings, and I remind you as well that you should

18    please identify yourself for the record when you speak, and you

19    need to speak clearly enough so that I can hear you and the

20    court reporter and the other parties can hear you.  Please

21    don't interrupt each other.  I'll give everyone an opportunity

22    to speak.

23          Now, soon after this case was reassigned to me, I

24    issued an order.  Mr. Jones, it's known as a *Valentin* order

25    after the name of the case that gave rise to this obligation on

1    the part of the city.  In that order, I directed certain

2    things, including that the city provide you with information

3    calculated to help you identify who the individual defendants

4    are whom you are trying to name.  They've given you some

5    information, but we'll talk in a minute about that.

6         The order that I signed also asked the city -- the

7    individuals and the city to waive service of the summons in

8    this case.  So let me start with that and ask, Ms. Kruk, have

9    you, in fact, done that?

10        MS. KRUK:  Yes, your Honor.  The city, as well as the

11   two individual defendants, it's the chief, Hazel Jennings, and

12   former DOC commissioner, so I've waived, and all three have

13   filed an answer to the second amended complaint.  It's simply

14   the Jane and John Doe that remain unidentified as of today's

15   date.

16        THE COURT:  Now let's turn, then, to the order that

17   the city provide information with respect to the identity of

18   these defendants.  There's been some back and forth.  I really

19   don't want to hear quibbling about what went on and whether

20   there was or there wasn't cooperation.  What I would like to

21   know from the city is what have you done to try to identify

22   these individuals and what more do you need to identify them,

23   or is every individual who belongs in the case in the case?

24        MS. KRUK:  Your Honor, from our perspective, we have

25   made good faith efforts to identify the two individuals.  We've

1    provided a medical —- Mr. Jones' medical record and a letter

2    that listed out the over 50 occasions where a mental health or

3    medical professional interacted with Mr. Jones and asked for

4    additional information to help identify the two individuals at

5    issue.  He did provide some information, but unfortunately, it

6    wasn't sufficient to narrow their identity.

7           Then your Honor granted me permission to serve

8    identification interrogatories on the plaintiff, and I did so

9    on August 25, 2001.  I did not receive a response, so I sent

10   another copy of it, of the same interrogatories, on October 18,

11   2001.  And as of today's date, I have still not received a

12   response to those interrogatories.  So, unfortunately, at this

13   juncture, I haven't been able to, without additional

14   information, especially, that might focus the date of issue of

15   the events, so I haven't been able to identify.  So at this

16   juncture I would respectfully request that we —- that you

17   relieve the Law Department from its obligation to comply with

18   the *Valentin* order that we proceed into discovery, and then, of

19   course, if discovery might identify or result in the

20   identification of additional relevant defendants, we can

21   certainly raise it at that time.  But we do have the city and

22   two named individuals in the case, so I think we could

23   effectively proceed with the defendant as identified.

24          THE COURT:  All right.  I saw some reference in

25   correspondence —- I'll turn to you in a minute, Mr. Jones —- I

1    saw some correspondence to the effect that the city was seeking

2    dismissal.  You have not filed a motion, right?

3              MS. KRUK:  That's correct.

4              THE COURT:  And you're not intending to do so at this

5    time?

6              MS. KRUK:  That's correct.

7              THE COURT:  Mr. Jones, have you heard everything that

8    Ms. Kruk told me?  First of all, have you received these

9    documents that were served on you by the city asking you

10   certain questions -- asking you in writing to answer certain

11   questions helping to identify these individuals?

12             MR. JONES:  Yes, I did receive multiple letters.  The

13   first time I responded with the Jane officer's name, so then I

14   believe that I'm talking about the same letters that the

15   defendant is speaking about.  I received a second letter.  I

16   got more information about the officer that I was speaking

17   about, and I was able to tell what her name, what her name

18   happens to be, and I was also able to describe how she look,

19   her height, and I was also able to give an approximation of the

20   dates these events happened because the city also gave me

21   medical records and the placement sheets where I was housed at.

22   So I said approximately between this date and this date these

23   things happened, and I gave them the name of the officer, or

24   one of the officers.

25             THE COURT:  You gave them a name, sir?

LBIHJonC

1          MR. JONES:  Say that again.

2          THE COURT:  You gave them a name?

3          MR. JONES:  Yes, ma'am.

4          THE COURT:  Is the name that you gave them the two

5     individuals who are now listed, Cynthia Brann --

6          MR. JONES:  Those are two of the names that was listed

7     before, but I was asked to identify Jane and John Doe.

8          THE COURT:  Yes.

9          MR. JONES:  I wasn't able to identify John Doe.  I was

10    able to obtain Jane Doe's name, and her name is Uniberg.  She

11    was a steady officer in the housing facility I was housed in.

12         THE COURT:  All right.  Ms. Kruk, do you know this

13    person?  Have you looked into the identity of this person?

14         MS. KRUK:  I have, your Honor, and that individual,

15    there is a Bernadette Uniberg, who is a correction officer at

16    the DOC.  She was not and never has been, however, assigned to

17    the West Facility, which is the location where plaintiff

18    alleges the violations took place.  So if he's certain about

19    the location and that it wasn't at a different facility, then

20    it doesn't match up.  But, of course, I can certainly, you

21    know, identify her and an address for service if plaintiff does

22    want to proceed against her, but I did want to flag the

23    location of her assignment does not seem to coincide with

24    plaintiff's allegations.

25         MR. JONES:  Can I say something, your Honor?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    THE COURT:  Yes, Mr. Jones.  I was going to say, is

2  there something you want to say?  Go ahead.

3    MR. JONES:  Maybe because -- maybe she's been

4  reassigned, but during the time that I was in West Facility,

5  that was the officer.  Her name was Ms. Uniberg.  I didn't

6  remember at the time, but I spoken to other inmates who was

7  housed there with me, and they all had the same complaint

8  against her.  Brandon -- and Tyrique Hill are also two other

9  cases that should have been civil court -- that are being

10  handled in civil court, and all of us have identified Uniberg

11  as the officer that was the officer.

12    THE COURT:  All right.  So here's where we're at,

13  Mr. Jones.  You have the right at this stage, if you were

14  confident, to name this person in an amended pleading.  We'll

15  get the forms and we'll have them sent to you, and you have the

16  right to amend what you've previously filed to just identify

17  Jane Doe as Ms. Uniberg.

18    MR. JONES:  Yes, ma'am.

19    THE COURT:  Ms. Kruk will provide the information for

20  you to arrange to have that complaint served on her.

21    Although, Ms. Kruk, I would request -- I'm going to

22  enter an order requesting that you waive service of the summons

23  and that --

24    MS. KRUK:  That's fine.

25    THE COURT:  -- you accept.  You agree to accept?

LBIHJonC

1          MS. KRUK:  Yes, your Honor.

2          THE COURT:  So, Mr. Jones, we'll get you the form, and

3  you can amend it to say that you are identifying Jane Doe as

4  this individual.

5          MR. JONES:  Yes, ma'am.

6          THE COURT:  The next step, then, is that your case

7  proceeds to what's called discovery where you get to serve

8  requests for information on the city and on the individual

9  defendants.  They in turn get to serve information requests on

10  you, and maybe it can help narrow what the issue is here.  At

11  some point, depending on the information as it gets developed,

12  the city may then at that point make a motion or it may not,

13  but that's what happens in a civil case, that the parties move

14  forward and start exchanging information.

15          So that's where we're at.  You can amend your

16  complaint to add this individual without any assurance that

17  there won't be a motion down the road if discovery reveals some

18  kind of an error, but on the other hand, you may develop

19  information that makes it very clear that this is a properly

20  named party as well.

21          Now, the only issue that I still have open to talk to

22  you about is you've requested repeatedly that the Court appoint

23  a lawyer for you.  And I understand, Mr. Jones, the difficulty

24  that you have in trying to prosecute your case from prison.

25  However, there is not a constitutional right to have a lawyer

LBIHJonC

1    appointed for you in a civil case as opposed to in a criminal

2    case where you're a defendant.

3            Having said that, the Court does try to see if there

4    are ways that we can help an individual, and I'd like to try to

5    see if there is any way I can do that.  But I need to -- before

6    I can even consider it, there are certain conditions that have

7    to be met.  One is that I have to understand what steps you've

8    taken to try to find a lawyer.

9            Have you reached out, for example, to any of the

10   organizations that exist?  The *pro se* office could give you a

11   list of them, various organizations that could represent you in

12   this case.  Have you tried to do that?

13           MR. JONES:  I didn't write -- I didn't write the *pro*

14   *se* office, but I wrote a few lawyers because I had access to

15   this book called the *Lawyer's Diary* where it had all the

16   addresses to different offices.

17           THE COURT:  Yes.

18           MR. JONES:  The lawyers that I written, they said they

19   would not be interested in taking my case at this time.

20           THE COURT:  OK.

21           MR. JONES:  Also, I would like to just try to add into

22   the point that right now I'm in protective custody, so I'm

23   locked in my cell 23 hours a day.

24           THE COURT:  Why are you in protective custody, sir?

25           MR. JONES:  Bad choices I made as a teenager.  I was

1   once a gang member.

2           THE COURT:  I see.

3           MR. JONES:  So being that I'm not involved in that

4   lifestyle anymore, being in prison, there's no way you could

5   just walk away from it.

6           THE COURT:  All right.  I understand, sir.

7           All right.  But there's nothing I can do about that.

8   I was asking simply to see --

9           MR. JONES:  I have no access to law library.

10          THE COURT:  Yes, I understand.  I understand the

11  issues.

12          MR. JONES:  For materials, you request materials, they

13  don't always bring them to us.

14          THE COURT:  I understand.

15          MR. JONES:  I'm going to have to do it from my cell.

16  And me requesting certain information and stuff is like I'm

17  rolling the dice of maybe I'll get the answer, maybe I won't.

18          THE COURT:  Yes, I understand, sir.

19          So let me just talk to you about the final issue in

20  terms of my even trying to recommend or see through a way to

21  have you have counsel.  The final factor is the merits of your

22  case.  Judge Swain, in her order, pointed out to you a

23  fundamental problem with the claim that you are bringing, which

24  is the following:  You named the city as a defendant in this

25  case, and yet again in your most recent letter in which you're

1    asserting your claims, you say that the city's policy was

2    violated by the Department of Corrections, which means that

3    you're saying the city does not have a policy, which is what

4    you would have to prove in order to prevail against the city.

5            Now, the thing, Ms. Kruk, that I find a little

6    perplexing is you're telling me the city is not seeking to

7    dismiss at this stage, right?

8            MS. KRUK:  I mean --

9            THE COURT:  I'm asking Ms. Kruk.

10           Go ahead.

11           MS. KRUK:  I guess it was in anticipation of

12   Ms. Uniberg being added on to the case and seeing what his

13   amended complaint looks like, and then I would certainly

14   reassess at that point.

15           THE COURT:  All right.

16           MR. JONES:  The Board of Corrections has a policy

17   states that administration segregation is not permissible in

18   this -- in this city.  The Board of Corrections works for the

19   city, and the Department of Corrections works for the city.

20           THE COURT:  Yes, but the point is, sir, you're saying

21   that the policy is not to violate people's constitutional right

22   but that individuals disobeyed that policy.  You're not

23   alleging, as you would have to in order to recover against the

24   city, that there is a citywide policy that is violative of your

25   constitutional rights.  That's the issue that's going to be

1    raised.

2              Now, as I said, I'm going to give you leave to amend

3    one more time to address this and to add this new individual

4    person.  I also suggest to you that you need to try to speak to

5    the *pro se* office at the court, make a phone call, and ask them

6    if they can put you in touch with organizations that provide

7    assistance to people like you in civil cases.

8              MR. JONES:  I don't have access to do that.

9              THE COURT:  You can't make a phone call?

10             MR. JONES:  No.  I'm -- I'm not able to just pick up

11   the phone and call the courts.

12             THE COURT:  I know you can't just pick up a phone

13   whenever you want, but is there no ability to make arrangements

14   to have access to a telephone?

15             MR. JONES:  We have counselors that supposed to give

16   us legal calls, but if the Court doesn't order my counselor to

17   give me a legal call, she's not going to give me a legal call.

18             THE COURT:  OK.  I will enter an order that you be

19   permitted.  Who's your counselor?

20             MR. JONES:  Her name --

21             THE COURT:  I'm sorry, sir, you cut out.

22             MR. JONES:  Her name is Ms. McDaniels.

23             THE COURT:  All right.  I'll enter an order that

24   Ms. McDaniels facilitate a call by you to the *pro se* office in

25   order that you can ask them for the identity of organizations

LBIHJonC

1    that provide pro bono, meaning for free, legal assistance, and

2    that she also facilitate phone calls by you to those

3    organizations.

4              MR. JONES:  Yes, ma'am.  I appreciate that.

5              THE COURT:  I will also undertake on my own to give

6    some consideration to whether there are any other means to try

7    to facilitate representation.  But I have to tell you that a

8    critical component, in terms of whether people will take your

9    case and whether I can even impose on someone to take your

10   case, is the merits.

11             I need you to file that amended -- you can do it in

12   handwriting, just like you've done before -- an amended

13   pleading in which you add this other individual, you describe

14   what the role of each of these individuals was.  And you think

15   about what I'm telling you about in order to assert a claim

16   against the city, you need to allege some kind of a citywide

17   policy that violates your constitutional rights.  It's not a

18   policy if you say the city had a policy that I cannot -- this

19   cannot happen, but it happened anyway.  That's not a policy.

20   That's a violation of a good policy by somebody else.

21             Do you understand what I'm explaining?

22             MR. JONES:  Not -- not fully.  I don't fully

23   understand what you're saying.  I'm just being honest.  I

24   understand somewhat, but I still don't get it because I don't

25   understand the law.  To my knowledge, that if -- you can't sue

LBIHJonC

1    the city because they're going to say they're acting in color

2    of the state, so that's why I sued the city.

3                THE COURT:  No, but the city is saying -- to sue the

4    city, the law says you have to allege a pattern or a practice

5    by the city that is unconstitutional, and yet in your letter

6    you say the policy of the city is that there should not be

7    administrative segregation.  So the policy of the city is a

8    good policy that doesn't violate your constitutional right,

9    according to what you wrote in your letter.  It's just that

10   some individual people, you're saying --

11               MR. JONES:  I understand.

12               THE COURT:  OK.

13               MR. JONES:  The violation was them violating due

14   processing and placing me in there without -- without an option

15   to challenge me being in isolation.  They had me in that

16   administrative segregation, and they didn't have no way for me

17   to challenge getting out of it.  That's the violation.

18               THE COURT:  All right.  Well, if you're saying that

19   was the citywide policy, you need to make that clear in your

20   next complaint that you file.

21               MR. JONES:  All right.

22               THE COURT:  And then once I -- and you can add this

23   individual that you're talking about.  Once I receive it, you

24   can send a copy of it to Ms. Kruk, because she has said that

25   she will accept service on behalf of the individual.  We're not

LBIHJonC

1    going to make you go through all the formalities.

2           Correct, Ms. Kruk?

3           MS. KRUK:  Yes.  I will need to conduct a

4    representation interview of her, but I will undertake that now

5    in anticipation of service.

6           THE COURT:  So you send that, Mr. Jones, to Ms. Kruk,

7    and then once Ms. Kruk receives it and I receive it, I will

8    review it carefully to see if there is any way I can do more to

9    try to get counsel to help you, and she will review it to

10   decide whether she wants to make any kind of motion, which she

11   has not yet done.

12          MR. JONES:  Yes, ma'am.

13          THE COURT:  Then we will also, shortly after that, get

14   an order in place, if there is no motion practice, saying, OK,

15   now everybody can serve on each other requests for documents

16   and other information, which we call discovery.  But that's

17   only if we get past this first stage.  All right?

18          MR. JONES:  Yes.

19          THE COURT:  All right.  Anything else from you,

20   Ms. Kruk?

21          MS. KRUK:  No.  Thank you, your Honor.

22          THE COURT:  All right.  Anything further, Mr. Jones?

23          MR. JONES:  Just want to make sure I have a complete

24   understanding.  I'm going to have to reamend the claim --

25          THE COURT:  Yes.

1    MR. JONES:  -- add the officer that I just stated and

2    clarify what violations of my constitutional rights was being

3    violated.  I have to make sure I'm clear on that?

4    THE COURT:  Yes.  But if you are going to try to sue

5    the city, the city is only liable if you can allege a pattern

6    and a practice that violates your constitutional rights.

7    MR. JONES:  All right.

8    THE COURT:  OK.

9    MR. JONES:  Yeah, I think I can -- I think I

10   understand that.

11   THE COURT:  Very good then.  All right.  Then we are

12   adjourned, and I wish everybody as good a rest of the day as

13   you can have.

14   And I thank our court reporter.

15   MS. KRUK:  Thank you, your Honor.

16   THE COURT:  All right.  Thanks very much.

17   MR. JONES:  Thank you.

18   THE COURT:  Bye-bye.

19   (Adjourned)

20

21

22

23

24

25